```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
               CIVIL NO. 20-2192(DSD/KMM)
```

Paul's Industrial Garage, Inc., a
Wisconsin corporation; Countryside
Disposal LLC, a Minnesota corporation;
and Flom Disposal, Inc., a Minnesota
corporation,

        Plaintiffs,

v.                                        **ORDER**

Goodhue County, a Minnesota county;
the Goodhue County Board of
Commissioners, Minnesota, in their
official capacities, and the City of
Red Wing, a Minnesota municipality,

        Defendants.

    Erick G. Kaardal, Esq. and Mohrman, Kaardal & Erickson, P.A., 150 South Fifth Street, Suite 3100, Minneapolis, MN 55402, counsel for plaintiffs.

    Andrew J. Pieper, Esq. and Stoel Rives, LLP, 33 South Sixth Street, Suite 4200, Minneapolis, MN 55402, counsel for defendants Goodhue County and Goodhue County Board of Commissioners.

    John M. Baker, Esq. and Greene Espel, PLLP, 222 South Nineth Street, Suite 2200, Minneapolis, MN 55402, counsel for defendant City of Red Wing.

    This matter is before the court upon the motions for summary judgment by defendant the City of Red Wing; defendants Goodhue County and the Goodhue County Board of Commissioners; and plaintiffs St. Paul Industrial Garage (PIG), Countryside Disposal, LLC, and Flom Disposal, Inc. Based on a review of the file,

record, and proceedings herein, and for the following reasons, the court grants defendants' motions and denies plaintiffs' motion.

**BACKGROUND**

This constitutional action arises from a newly enacted ordinance requiring waste haulers to bring mixed municipal solid waste (MMSW) collected in Goodhue County to a facility in Red Wing, Minnesota. Plaintiffs allege that the ordinance discriminates against out-of-state businesses in violation of the dormant Commerce Clause.

PIG is a Wisconsin company that hauls MMSW from customers in Goodhue County, Minnesota to its transfer station in Hager City, Wisconsin. Deml Decl. ¶¶ 2, 4. In 2019, PIG earned approximately $288,000 in sales from commercial and residential customers in Goodhue County. Id. ¶ 7. PIG also accepts MMSW at its Wisconsin transfer station from other haulers, including Countryside and Flom, who collect MMSW in Goodhue County. Id. ¶¶ 15-16; Flom Decl. ¶¶ 4, 11; Erickson Decl. ¶¶ 4, 6. After MMSW is delivered to the transfer station, PIG puts it into containers and transports it to a landfill in La Crosse, Wisconsin. Deml Decl. ¶ 5.

On August 18, 2020, the Goodhue County Board of Commissioners adopted the Goodhue County Solid Waste Designation Ordinance (Ordinance). The Ordinance requires all waste haulers doing business in Goodhue County to deliver MMSW collected within the

county to the Red Wing Solid Waste Campus, which is operated by the City of Red Wing.[1] Kaardal Decl. Ex. 1, at 3; id. §§ 3-4; Jones Decl. Ex. 9, at 1. The Ordinance is designed to reduce the volume of MMSW in landfills and to provide an alternative fuel source to generate electricity.[2] Isakson Decl. Ex. D, at 5-6. Specifically, Goodhue County wants to reduce the percentage of MMSW that ends up in landfills and to increase the percentage of waste that becomes energy.[3] Kaardal Decl. Ex. 2, at 96.

In addition, the Ordinance is designed to redirect liabilities relating to the Bench Street Landfill, located in Red Wing, to the State through the Closed Landfill Program (CLP). The CLP allows counties to transfer landfill responsibility and liability to the State if the county requires all MMSW collected within its boundaries to be processed at a resource recovery center (RRC) within the county. Isakson Decl. ¶ 6. The Red Wing Solid Waste Campus is the only RRC in Goodhue County. Id. The

---

[1] The Ordinance went into effect on October 19, 2020. Kaardal Decl. Ex. 1, at 3.

[2] Plaintiffs do not contend that the Ordinance was enacted with discriminatory intent and do not dispute that the Ordinance serves a legitimate government purpose. As a result, the court will not detail the lengthy and deliberative municipal and regulatory processes that preceded the Ordinance. See Isakson Decl. Exs. A-Q.

[3] The Minnesota Pollution Control Agency approved the Ordinance. Isakson Decl. Ex. Q, at 16.

Ordinance's designation requirement allows Goodhue County to pursue its longstanding public policy goal of participating in the CLP, thereby avoiding substantial cleanup costs and environmental liability.

To meet these purposes, Red Wing will make refuse-derived fuel (RDF) from the MMSW and will then deliver the RDF to the Xcel Energy powerplant in Red Wing,[4] where Xcel will use it to generate energy.[5] Jones Decl. Ex. 8; ECF No. 33-1; Jones Decl. Ex. 2, at 2; id. Ex. 3, at 1-3. The Ordinance itself does not require Red Wing to deliver RDF to Xcel or any other RRC.

Waste haulers were previously permitted to dispose of MMSW at any "state approved facility," including PIG's transfer station. See Kaardal Decl. Ex. 2 § 1.6. Now, haulers, including plaintiffs, are prohibited from delivering MMSW collected in Goodhue County to any facility other than the Red Wing Solid Waste Campus. Kaardal Decl. Ex. 1 § 4.

Plaintiffs would still prefer, however, to transfer MMSW collected in Goodhue County to PIG's Wisconsin transfer station.

---

[4] Red Wing may also distribute the RDF to RRCs other than Xcel, specifically facilities located in Barron County, Wisconsin and Olmstead County, Minnesota. ECF No. 1-2, at 4.

[5] The relationship between Red Wing and Xcel is governed by the RDF supply agreement, entered into in 2018. See Jones Decl. Ex. 8.

Flom Decl. ¶ 11; Erickson Decl. ¶ 12. This is primarily due to the Ordinance's comparatively high tipping fee. Deml Decl. ¶¶ 15-16; Flom Decl. ¶ 9; Erickson Decl. ¶ 10. Under the Ordinance, haulers must pay a $118 per ton tipping fee for MMSW delivered to the Red Wing Solid Waste Campus. Deml Decl. ¶ 10. In contrast, PIG charges between $65 and $67 per ton as a tipping fee at its transfer station. Id. ¶ 15; Flom Decl. ¶ 6; Erickson Decl. ¶ 7. Plaintiffs contend that the Ordinance's tipping fee will unduly increase their business expenses and will require them to charge customers more for their services. Deml Decl. ¶¶ 13-14; Flom Decl. ¶¶ 10, 13-14; Erickson Decl. ¶¶ 10-11. PIG also estimates that it will lose a significant amount of business due to the loss in tipping fees for Goodhue County MMSW that can no longer be delivered to its transfer station. Deml Decl. ¶¶ 19, 22-24.

Plaintiffs allege that the Ordinance impermissibly favors Xcel, a privately owned public utility, by implementing the plan requiring the RDF to be delivered to Xcel's powerplant. According to plaintiffs, the Ordinance effectively makes Xcel a competitor of other waste haulers. Plaintiffs acknowledge, however, that they are not in the business of turning waste into RDF or turning RDF into electricity.

5

Under the RDF supply agreement between Red Wing and Xcel, Red Wing pays Xcel a maintenance fee of $21 per ton of RDF delivered to the Xcel electric generating plant. Jones Decl. Ex. 8 § 6.2. Xcel pays Red Wing $2 per ton of RDF delivered to the Xcel facility. Id. § 6.1. Although Red Wing pays Xcel more than it receives, Red Wing pays less for MMSW disposal through this process than it would pay to dispose of MMSW in a landfill. See Kaardal Decl. Ex. 1, at 148.

The Ordinance imposes civil and criminal liability for non-compliance. Kaardal Decl. Ex. 1 § 15. There is no dispute that the MMSW plaintiffs pick up from Goodhue County customers must be delivered to the Red Wing Solid Waste Campus.

On October 19, 2020, plaintiffs commenced this action alleging that the Ordinance violates the dormant Commerce Clause. Plaintiffs seek a declaration that the Ordinance is unconstitutional, an injunction enjoining defendants from enforcing the Ordinance, and an award of attorney's fees and expenses. All parties now move summary judgment.

## DISCUSSION

### I. Standard of Review

The court "shall grant summary judgment if the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

The court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party must set forth specific facts sufficient to raise a genuine issue for trial; that is, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see Anderson, 477 U.S. at 249-50; Celotex v. Catrett, 477 U.S. 317, 324 (1986). Moreover, if a plaintiff cannot support each essential element of its claim, the court must grant summary judgment, because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

**II. Dormant Commerce Clause**

The Commerce Clause of the Constitution provides that "Congress shall have Power ... [t]o regulate Commerce ... among

7

the several States ...." U.S. Const. art. I, § 8, cl. 3. Although the language provides an affirmative grant of power to Congress, the clause is also recognized as "a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce." Indep. Charities of Am. v. State of Minn., 82 F.3d 791, 798 (8th Cir. 1996) (citing So.-Cent. Timber Dev., Inc. v. Wunnicke, 467 U.S. 82, 87 (1984)). The "negative" or "dormant" aspect of the clause denies "the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." Or. Waste Sys., Inc. v. Dept. of Env't Quality of Or., 511 U.S. 93, 98 (1994). In essence, the dormant Commerce Clause "prohibits economic protectionism — that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." New Energy Co. of Ind. v. Limbach, 486 U.S. 269, 273 (1988).

**A.  Not Similarly Situated**

To determine whether constitutional scrutiny is warranted, the court must first consider whether plaintiffs are similarly situated to Xcel - the entity they claim to be in competition with. See Gen. Motors Corp. v. Tracy, 519 U.S. 278, 298 (1997) ("Conceptually, of course, any notion of discrimination assumes a comparison of substantially similar entities."); LSP Transmission

Holdings, LLC v. Lange, 329 F. Supp. 3d 695, 705 (D. Minn. 2018) (holding that the "threshold issue" in dormant Commerce Clause analysis is whether the law at issue applies to similarly situated entities); Nat'l Solid Waste Mgmt. Ass'n v. Williams, 877 F. Supp. 1367, 1374 (D. Minn. 1995) ("[T]he Commerce Clause is intended to promote equality between similar in-state and out-of-state interests which compete in the same market."). "This is so for the simple reason that the difference in products may mean that the different entities serve different markets, and would continue to do so even if the supposedly discriminatory burden were removed." Tracy, 519 U.S. at 299. In other words, "if a statute distinguishes between 'different entities' serving 'different markets,' there would be no discrimination." Lange, 329 F. Supp. 3d at 705-06.

Defendants argue that Xcel and PIG are distinct businesses that do not compete for customers or provide the same services. Defendants specifically note that plaintiffs are waste haulers that collect MMSW from residential and commercial customers and transport that MMSW to PIG's transfer station. Once at the transfer station, the MMSW is collected and sent to a landfill for disposal. Xcel, on the other hand, is a multi-state electric utility that generates electricity from a various resources, among

9

them RDF. Xcel does not: (1) collect or haul MMSW; (2) accept MMSW; (3) own or operate a waste transfer station; or (4) dispose of MMSW at a landfill. Indeed, Xcel does not handle MMSW at all.

Plaintiffs do not dispute any of the distinctions noted by defendants, but nevertheless argue that Xcel directly competes with PIG (in particular) because they both ultimately "dispose" of waste – Xcel by generating electricity from RDF derived from MMSW and PIG by putting MMSW in a landfill. The court is not persuaded by plaintiffs' overly broad approach to the issue.

MMSW and RDF are different products governed by different regulatory schemes. See Minn. Stat. § 115A.03, subdiv. 21(a) ("'Mixed municipal solid waste' means garbage, refuse, and other solid waste from residential, commercial, industrial, and community activities that the generator of the waste aggregates for collection."); Minn. Stat. § 115A.03, subdiv 25d ("'Refuse-derived fuel' means a product resulting from the processing of mixed municipal solid waste in a manner that reduces the quantity of noncombustible material present in the waste, reduces the size of waste components through shredding or other mechanical means, and produces a fuel suitable for combustion in existing or new solid fuel-fired boilers."); see also Wis. Admin. Code NR § 502.07 (regulating waste transfer facilities), and Minn. R. 7011.1201, et

seq. (establishing that the Minnesota Pollution Control Agency regulates RDF).

The fact that RDF is derived from MMSW does nothing to establish that plaintiffs compete with Xcel. Indeed, as defendants aptly argue, "comparing MMSW and RDF is like comparing corn to corn syrup and saying that farmers who harvest corn and food processors who manufacture and sell corn syrup compete against each other." ECF No. 56, at 7. Just as farmers do not compete with food processors, waste haulers do not compete with energy producers.[6]

Because plaintiffs are not similarly situated to Xcel, the dormant commerce clause is not implicated.[7] See Regan v. City of Hammond, Ind., 934 F.3d 700, 704 (7th Cir. 2019) (quoting Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 95 (2d Cir. 2009)) ("[L]aws that draw distinctions between entities that are not competitors do not 'discriminate' for purposes of the dormant commerce

---

[6] The fact that Red Wing pays Xcel a fee to take the RDF does not change the court's analysis. That arrangement is between Red Wing and Xcel and, in any event, results in Red Wing paying less for MMSW disposal than it would to dispose of it in a landfill. Further, Red Wing may distribute the RDF to other RRCs in Wisconsin and Minnesota, which undercuts plaintiffs' argument that the Ordinance is designed to favor Xcel over plaintiffs.

[7] A more apt comparison would be among plaintiffs and the Red Wing Solid Waste Campus, which is where MMSW must be delivered under the Ordinance.

clause."). Defendants therefore are entitled to summary judgment.

   **B.   <u>United Haulers</u> Applies**

Even if plaintiffs were similarly situated to Xcel, defendants would still be entitled to summary judgment because the Ordinance falls within the bounds of <u>United Haulers Association v. Oneida-Herkimer Solid Waste Management Authority</u>, 550 U.S. 330 (2007). In <u>United Haulers</u>, the United States Supreme Court upheld a New York law requiring haulers to bring waste to "facilities owned and operated by a state-created public benefit corporation." <u>Id.</u> at 334. The Court reasoned that "[d]isposing of trash has been a traditional government activity for years, and laws that favor the government in such areas — but treat every private business, whether in-state or out-of-state, exactly the same — do not discriminate against interstate commerce for purposes of the Commerce Clause." <u>Id.</u> at 334. Here, similarly, the Ordinance does not discriminate against private businesses. Rather, the Ordinance mandates that MMSW collected in Goodhue County be brought to the Red Wing Solid Waste Campus, a governmental facility, for processing. Under <u>United Haulers</u>, then, the Ordinance does not run afoul of the Commerce Clause.

Plaintiffs argue that United Haulers is inapposite and that the court should look instead to <u>C&A Carbone, Inc. v. Town of</u>

12

Clarkstown, N.Y., 511 U.S. 383 (1994). The court disagrees. In Carbone, which preceded United Haulers, the Court held that an ordinance forcing haulers to deliver waste to a particular private facility discriminated against interstate commerce in violation of the dormant Commerce Clause. Id. at 387. In United Haulers, the Court readily distinguished Carbone: "The ... salient difference [between the two cases] is that the laws at issue here require haulers to bring waste to facilities owned and operated by a state-created public benefit corporation. We find this difference constitutionally significant." 550 U.S. at 334. Again, here, the Ordinance does not favor a private business over other private businesses; it instead mandates delivery of MMSW to a government facility. As such, Carbone does not govern this dispute.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. Red Wing's motion for summary judgment [ECF No. 20] is granted;

2. Goodhue's motion for summary judgment [ECF No. 22] is granted;

3. Plaintiffs' motion for summary judgment [ECF No. 27] is

13

denied; and

    4.   The case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 13, 2021

                                          <u>s/David S. Doty</u>
                                          David S. Doty, Judge
                                          United States District Court